UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

IN RE:

FRANCISCO A. CUETO                              Chapter 7

    Debtor.                              Bankruptcy No. 03-04835S

FRANCISCO A. CUETO

    Plaintiff

vs.                                          Adversary No. 04-9113S

AMERICAN EDUCATION SERVICES

    Defendant

EDUCATIONAL CREDIT MANAGEMENT CORP.

    Intervener-Defendant.

MEMORANDUM DECISION

Francisco A. Cueto (Martinez) asks the court to determine that his student loan obligation to Educational Credit Management Corporation not be excepted from his discharge because to except the debt would be an undue hardship on him and his dependent spouse. Final trial of this adversary proceeding was held May 4, 2005 in Sioux City. Donald H. Molstad appeared as attorney for Mr. Cueto. Christopher C. Foy appeared as attorney for Educational Credit Management Corporation (hereinafter "Educational Credit"). I have jurisdiction of this proceeding under 28 U.S.C. §§ 1334(b) and 157(a) and the District Court's Order of Reference. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Mr. Cueto is 64 years old. He came to the United States in 1966. He has been a United States citizen for approximately 30

years.  He was educated as an engineer at the University of Mexico. He also has a degree from Texas State University.

Cueto has been married to Norma Cueto for 26 years.  Mrs. Cueto has not been employed since coming to the United States. Approximately 20 years ago, she was diagnosed as having a cancerous brain tumor.  She underwent surgery in 1984 to have the tumor removed.  In May 2004, while the Cuetos were visiting Mexico, they learned that Mrs. Cueto's tumor had returned.  The Cuetos had been planning to return to Mexico so that Mr. Cueto could open a business.  They canceled the plan because of Mrs. Cueto's diagnosis.  The couple returned to the United States so she could be treated.

Mrs. Cueto underwent surgery to remove the second tumor in October 2004.  Her cognitive abilities are apparently unimpaired. However she has difficulty speaking.  Also, she must be fed through a tube.  Some of the tumor remains.  Soon she will begin radiation therapy to destroy the remaining part of the tumor.  She cannot completely care for herself.  Mr. Cueto helps with feeding.  He also takes her to her medical treatments.  Mrs. Cueto had the surgery at the Mayo Clinic in Rochester, Minnesota, and she will return there for the radiation treatment.  Her medical expenses are being paid through Title XIX of the Social Security Act.  She also receives $191.00 per month from the United States under a Social Security program.

The Cuetos moved to Storm Lake, Iowa in 1995 when Mr. Cueto obtained a job with IBP, Inc.  Prior to the move he had worked in

Texas at various jobs.  His first position at IBP, Inc. was in equipment maintenance.  He could not continue in that position because of an asthma condition.  He began working as a Spanish/English translator for IBP, Inc. beginning in 1998.  During 2002, he spent a short time as a supervisor for the company which had by then become Tyson Foods.  He became a production employee later in 2002, and worked in that capacity until he retired from Tyson on December 13, 2003.  From 2000 through the end of 2003, his gross annual income from his job ranged from a high of $31,246.00 in 2000 to a low of $21,672.00 in 2003.  Since his retirement, Mr. Cueto has been receiving monthly social security payments of $666.00.  There is no evidence that he receives a pension from Tyson Foods.

   Mrs. Cueto's illness caused the couple to cancel plans to retire to Mexico, where Mr. Cueto had planned to start a business.  Cuetos made significant changes to their lifestyle.  They sold their home and paid off the mortgage debt against it.  Mr. Cueto sold his pickup truck to a cousin in Mexico.  They also paid off some prepetition debt including a loan taken out by Mr. Cueto to buy his daughter a car.

   The Cuetos rent an apartment.  It is subsidized housing.  Their assets are modest.  They jointly own furniture and a small library of books.  In his own name, Mr. Cueto has a checking account, a 401(k) account, a 1986 automobile and some clothing.  According to his schedule of assets filed in the bankruptcy case in 2003, these scheduled assets have a total value of approximately

3

$3,400.00.

Mr. Cueto testified that the couple's monthly income consists of his social security payment of $666.00, Mrs. Cueto's social security payment of $191.00, and food stamps in the approximate amount of $80.00. Every six months or so, the couple receives financial help from Mrs. Cueto's brothers and sisters in Mexico. To augment income, Mr. Cueto has tried purchasing goods in the United States, which he can then sell in Mexico at a profit.

Despite Mr. Cueto's testimony that the couple's income consists primarily of social security benefits, his checking account statements for six periods after bankruptcy show many and some significant deposits (Exhibits O, P, Q, R, S and T). These statements cover the months of January, February, March, April, July and August 2004). These checking account statements show the following deposits, not including interest deposits:

```
January 27           $3,624.00
February 6               96.81
February 11           2,667.00
February 13             437.00 (tax refund)
February 17             206.00 (tax refund)
February 18             666.00 (social security)
March 1               2,000.00
March 17                666.00 (social security)
April 5               1,105.62
April 19                130.00
April 21                666.00 (social security)
April 26                120.00
July 2                1,200.00
July 21                 219.00
July 21                 666.00 (social security)
August 3                200.00
August 3                666.00 (social security)
August 13             2,000.00
August 18               250.00
August 23               220.75
```

(Exhibits O-T).

4

If I exclude the tax refunds, these deposits total $17,163.18 or an average aggregate deposit of $2,860.53 for each of the six months. The sources of many of these deposits are unexplained. It may be that the January deposit is for some of the proceeds of the one-time sale of Mr. Cueto's pickup truck to his cousin. The social security payments are obvious from the bank statement descriptions, and I have noted those. Mrs. Cueto's social security payments did not begin until sometime after May 1, 2003.

The couple's expenses are minimal. Based upon Mr. Cueto's testimony and from exhibits E and F, I find their monthly expenses to be as listed below. Where there were discrepancies, I generally relied first on the testimony, second on the answer to interrogatory number 21 (Exhibit F) and last on schedule J, filed with the bankruptcy petition (Exhibit E).

| | |
|---|---:|
| Net rent, after subsidy | $ 194.00 |
| Electric service | 40.00 |
| Gas for heating | 43.00 |
| Water | 25.00 |
| Phone | 66.00 |
| CATV and internet | 66.00 |
| Home maintenance | 15.00 |
| Food | 260.00 |
| Clothing | 30.00 |
| Laundry | 15.00 |
| Medical expenses | 200.00 |
| Transportation | 25.00 |
| Recreation | 10.00 |
| Charitable contributions | 10.00 |
| Home insurance | 38.00 |
| Car insurance | 28.00 |
| Life insurance | 9.00 |
| Total | $1,074.00 |

This total may not include some personal expenses of Mrs. Cueto, so I expect that the actual total may be somewhat greater. However,

5

her basic expenses are covered by these categories and payments or by government assistance.

Mr. Cueto's obligation to Educational Credit arises from loans taken by Mr. Cueto to finance his daughter's education. She was at university in Texas from 1996 to 2000. With accrued interest, it appears undisputed that the balance due on the debt is slightly more than $32,000.00. Educational Credit is a non-profit corporation organized under the laws of the State of Minnesota. It also appears undisputed that Mr. Cueto's debt to Educational Credit is a debt for an educational loan.

## Discussion

A debtor's discharge in a chapter 7 case does not discharge a debt for an educational loan made under a program funded all or in part by a non-profit institution, unless excepting the debt from discharge will impose an undue hardship on debtor and debtor's dependents. 11 U.S.C. § 523(a)(8). It is not disputed that Mr. Cueto's obligation to Educational Credit falls within the exception to discharge unless the undue hardship exception applies.

Mr. Cueto asks the court to find that excepting the debt from his discharge would impose an undue hardship on him and his spouse. He asks that the court find the debt dischargeable.

To determine whether excepting the debt from debtor's discharge would impose an undue hardship, the court must consider the totality of the circumstances, including "(1) the debtor's past, present, and reasonably reliable future financial resources;

6

a calculation of the debtor's and [his] dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding [the] particular bankruptcy case." Long v. Educational Credit Management Corp., 322 F.3d 549, 554 (8th Cir. 2003). "[I]f the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt--while still allowing for a minimal standard of living--then the debt should not be discharged." Id. at 554-555. The burden of persuasion is on the debtor to demonstrate "undue hardship." Ford v. Student Loan Guarantee Foundation of Arkansas, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001); Long v. Educational Credit Management Corp., 271 B.R. 322, 328 (B.A.P. 8th Cir. 2002), rev'd on other grounds, 322 F.3d 549 (8th Cir. 2003).

I recognize that Mr. Cueto is retired and that his wife is in ill health. Nonetheless, I must conclude that he has failed to meet his burden to show that excepting his student loan obligation from his discharge would impose an undue hardship on him and his spouse. His assets are modest. His expenses are minimal. Yet he has failed to introduce sufficient evidence to show that his future income could not pay these expenses and still cover payment of the student loan debt. He offered evidence to show the couple's fixed periodic income--his monthly social security income of $666.00 and his spouse's monthly social security income of $191.00. But for the most part, he has failed to explain other significant income received since his retirement. For six of the months since his retirement, total income has averaged $2,860.00. His only general

7

explanations for some of the deposits were that he sold his pickup truck and the couple received periodic loans from Mrs. Cueto's family. Even these explanations were not tied to specific deposits. Great uncertainty remains as to the sources and reliability of his future monthly income. This uncertainty is reinforced by indications that Mr. Cueto had a savings account at the time of filing bankruptcy, but that the asset was not scheduled (see Exhibits M and P showing transfers between savings account number 673668 and the checking account both before and after bankruptcy).

Mr. Cueto appears to be an intelligent, educated and experienced person. He appears to have the ability to earn money without the necessity of obtaining a full-time job that would interfere with his care of his spouse. He appears to be someone who is resourceful, and who is also experienced and knowledgeable in commercial opportunities between parties in the United States and Mexico. I conclude that he has failed to show his monthly income is limited now and in the future only to social security retirement benefits and to disability income. I, therefore, cannot conclude that excepting his student loan obligation from discharge would impose an undue hardship on him and his spouse.

IT IS ORDERED that the complaint of Francisco A. Cueto seeking discharge of his obligation to Educational Credit Management Corp. is dismissed.

DATED & ENTERED:
May 9, 2005

William L. Edmonds, Bankruptcy Judge

8